UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION, AT KNOXVILLE

KENNETHA POPE, MICHAEL BROWN, NICOLE )
AUFDEN KAMP, JANET BORNHOEFT, CARMEN )
BRACCO, MARLINDA BROWN, BRANDON )
CAMERON, KAYLA CAMERON, JONATHAN )
COFFMAN, CATHERINE CRISP, FRANCES DESHA, )
RANDALL DOUGLASS, JR., NICHOLAS FIELDS, )
REGINALD GRICE, RYAN HARKAI, MARK )
HONNOLD, NATASHA HUTSON, THOMAS )
JOHNSON, DAVID LEDFORD, MICHAEL LYKE, )
EBONY MACK, ROBERT MATTHEWS, TERENCE )
MCCLORA, TERENCE MCKISSIC, RICKEY )
MCGRONE, KELLY MYERS, DOROTHY MYNATT, )
DEBORAH NELSON, PAUL NELSON, LEE PERDUE,)
MARCUS RANKINS, SHRONDA RELIFORD, )
FREDDIE RICHMOND, SUSAN RINGLEY, SHAWN )
RUCKER, MARK SALRIN, ANTHONY SAMPLES, )
JUSTIN SHERROD, BOBBY SIDES, ASHANTE )
SMITH, MATTHEW SMITH, JAMES TENNANT, III, )
STEPHEN TONEY, RICHARD WILLIAMS, and )
CORNELIS VANDER ZEYDEN, )
                                        )
       **Plaintiffs,**                  )
                                        )
**v.**                                  ) No.:
                                        )
WALGREEN CO. d/b/a WALGREENS,           ) FLSA COLLECTIVE ACTION
                                        )
       **Defendant.**                   )
                                        )

## COMPLAINT

Come now the Plaintiffs, by and through counsel, and sue Defendant Walgreen Co. d/b/a Walgreens, as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*.

1

2. The Court has subject matter jurisdiction pursuant to the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has personal jurisdiction over Plaintiffs, who are citizens and residents of counties throughout Tennessee and this judicial district, and Defendant who is an Illinois corporation but who conducts business in this judicial district.

3. Venue lies in the Eastern District of Tennessee pursuant to 28 U.S.C § 1391.

4. Plaintiffs are current or former employees of Defendant's Tennessee stores. In the regular course of their job, Plaintiffs handled, sold, received and/or shipped goods that traveled in interstate commerce. Accordingly, they are covered employees under the FLSA.

5. Throughout the country Defendant operates retail stores in which it sells consumer goods in categories such as pharmacy, hygiene, personal cosmetics, grocery, nutrition, and general household goods. All of Defendants thousands of stores exist for a common business purpose of selling products to consumers at retail prices. Its annual gross revenue is approximately $72 billion. Accordingly, Defendant is engaged in interstate commerce, is a commercial enterprise, and is a covered employer under the FLSA.

**PROCEDURAL HISTORY INVOLVING PARTIES**

6. Each Plaintiff consented to and did join a pending lawsuit against Defendant that asserted essentially identical claims and that arose from the same set of operative facts that are at issue in this case. That case was filed in the United States District Court, Western District of Arkansas, Fayetteville Division, and was styled *Teramura et al. v. Walgreen Co. d/b/a Walgreens*, No. 5:12-cv-05244-ELS.

7. The court in *Teramura* entered on May 7, 2013 an order conditionally certifying a class of employees that included the Plaintiffs named herein. In the course of that litigation, approximately 1,698 employees joined the collective action. As members of that group Plaintiffs filed written consents to adjudicate their claims collectively against Defendant.

8. After discovery the court entered the parties' agreed order decertifying the class of which Plaintiffs were a part. The reason for the decertification was that discovery taken of representative members of the class revealed too many material dissimilarities among the nearly 1,700 plaintiffs to result in a fair and efficient adjudication of the claims.

9. The *Teramura* court's order dismissed Plaintiffs' claims without prejudice and gave them "90 days following issuance of the notice of decertification to file an individual action under the FLSA without losing the benefit of tolling the applicable statutes of limitations that each such individual secured upon filing a consent to join this lawsuit as an opt-in plaintiff." This order was entered on June 18, 2014, and the Notice of Decertification was provided to Plaintiffs on July 2, 2014.

## FACTS OF PRESENT CASE

10. Each named Plaintiff has worked or now works for Defendant, and each Plaintiff held a job position Defendant labeled as "Executive Assistant Manager" ("EXA"). While assigned to this position, Defendant scheduled them to work a minimum of forty-four (44) hours per week. Regardless of their schedule, Plaintiffs regularly and repeatedly worked far in excess of forty-four (44) hours per week.

11. While holding the EXA position Plaintiffs primarily performed tasks generally associated with retail sales associates in the industry. These duties included unloading and unpacking merchandise delivered by commercial trucks, stocking shelves, positioning products based on predefined marketing strategies, assisting customers with their selections and purchases, operating cash registers, and maintaining the appearance of the store. These duties accounted for approximately eighty percent (80%) of Plaintiffs' working hours.

12. With few exceptions, Defendant assigned to store managers and district managers the actual managerial tasks of running the stores. To the extent Plaintiffs performed

3

duties typically reserved to management employees, those duties were assigned to Plaintiffs by Plaintiffs' respective store managers. So even when performing those "managerial" tasks, Plaintiffs had little discretion or autonomy in how to perform them.

13. Defendant's store managers and district managers knew that its EXAs, including Plaintiffs, performed primarily non-exempt tasks.

14. Although Defendant did not maintain accurate records of hours the Plaintiffs worked as EXAs, Defendant had knowledge that they worked hours far beyond those scheduled.

15. Defendant paid each Plaintiff a fixed salary each week. Defendant, however, maintained a practice of deducting Plaintiffs' wages if they missed work even for less than a full day or when they were sick.

16. Defendant did not pay Plaintiffs one-and-a-half times their effective hourly rate for those hours Plaintiffs worked over forty in a single workweek.

17. Despite structuring the EXA job to be essentially a "senior sales associate" position—and knowing that EXAs, including Plaintiffs, primarily performed non-exempt job duties, Defendant applied the executive exemption to its EXA employees.

18. As a group, Plaintiffs worked in different stores and districts throughout Tennessee and were under the control and supervision of different managers. Still, by virtue of Defendant's business model and centralized human resource operations, the job duties, wage structure, and limitations of managerial authority were consistent for each Plaintiff. Additionally, Defendant applied its payroll practices and policies, including its misclassification of EXAs as overtime-exempt, to each Plaintiff.

4

## CAPACITY OF PLAINTIFFS

19. Plaintiffs bring this claim individually and collectively under the FLSA for unpaid overtime wages, liquidated damages, post-judgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. §§ 207 and 216(b).

20. Notwithstanding the *Teramura* court's decertification of the nationwide class of EXAs, Plaintiffs named herein assert that they are similarly situated to each other such that they are allowed to adjudicate their claims collectively against Defendant in this forum.

21. In the alternative, Plaintiffs are asserting individual claims that arise from the same series of transactions with Defendant (i.e. their employment relationship) and involve common questions of law such that they may join together pursuant to Rule 20 of the Federal Rules of Civil Procedure.

## CAUSES OF ACTION

22. Pursuant to the FLSA, every employer must compensate its employees for overtime work "at a rate not less than one and one-half times the regular rate at which the employee is actually employed" during the first forty (40) hours of work. 29 C.F.R. § 778.107.

23. To escape the requirement to pay its employees time-and-a-half based on the executive exemption, an employer must ensure, among other things, that the employee's primary duty is the management of the business or recognized subdivision thereof. An employer must also compensate the employee on a salary basis of at least $455 per week.

24. Defendant designed the EXA position to perform primarily non-exempt tasks; at the very least, Defendant was aware that its EXA employees throughout the country performed primarily non-exempt tasks as a matter of practice.

25. By virtue of its business model, Defendant was aware that far more non-exempt tasks than exempt ones were required to be performed by its employees. Therefore, it knew

that there were not enough managerial tasks for EXAs to perform to justify its treatment of these employees as exempt.

26. In choosing to turn a blind eye to its failure to pay overtime wages to EXAs, Defendant did not maintain accurate time records of Plaintiffs' hours of work. Nevertheless, Defendant was aware that Plaintiffs worked far more hours in a week than the minimum of forty-four (44).

27. Also, Defendant did not distribute policies or procedures by which employees could (1) challenge Defendant's (mis)classification of them as overtime-exempt, (2) notify Defendant that they were performing primarily non-exempt tasks, or (3) seek overtime wages if they believed their primary tasks rendered them non-exempt. In an organization with hundreds of thousands of employees spread over every state in the country, Defendant's inaction was reckless with regard to Plaintiffs' rights under the FLSA.

28. Defendant's intentional failure to pay the regular and overtime rate to which Plaintiffs are entitled by virtue of their primary job duties, its reckless disregard for Plaintiffs' rights under the FLSA, and its failure to maintain accurate timekeeping records of Plaintiffs' hours of work as EXAs are willful violations of the FLSA.

### EQUITABLE TOLLING

29. The named plaintiffs in the *Teramura* case filed the lawsuit on November 15, 2012. The Plaintiffs named herein opted-in during the "notice stage" occasioned by the *Teramura* court's conditional certification of the class.

30. Plaintiffs submit that this case should be deemed filed for statute of limitations purposes on November 15, 2012. If and to the extent a later date(s) would serve to reduce the wages Plaintiffs are owed, the original filing of November 15, 2012 should equitably toll the expiration of time that would so reduce the wages.

6

Case 3:14-cv-00439-TWP-CCS   Document 1   Filed 09/22/14   Page 6 of 8   PageID #: 6

31. Equitable tolling is an appropriate remedy under these facts because a strict application of the statute of limitations would be inequitable. Defendant specifically told Plaintiffs that they were exempt employees not entitled to overtime wages. Having superior knowledge of the FLSA, the affirmative obligation to comply with its requirements, and the resources to ensure compliance, Defendant concealed from Plaintiffs that the company was not complying with the requirements of the executive exemption as Defendant applied it to them. It would be manifestly unjust for Defendant to reap the benefit of its FLSA violations simply because Plaintiffs did not have the knowledge or resources to know that Defendant was violating their rights.

**DAMAGES**

32. As a direct, proximate, and exclusive result of Defendant's willful violations of the FLSA, each Plaintiff has suffered substantial monetary losses and damages, including lost wages, attorney fees, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, each Plaintiff respectfully prays for the following relief:

33. That the Court accept as sufficient to satisfy 29 U.S.C. 216 the consent forms each Plaintiff filed in the *Teramura* case, or in the alternative, that the Court establish a deadline by which the Court requires a filing of new consent forms in this case;

34. The he/she be allowed to collectively adjudicate his/her claims pursuant to §216 of the FLSA and/or that the Court allow the joinder of each Plaintiff named herein;

35. A declaratory judgment that Defendant violated the overtime provisions of the FLSA and that such violations were willful;

36. An award of unpaid wages and overtime compensation to which he/she is entitled based on a reasonable inference of his/her hours of work;

37. Liquidated damages in an amount equal to the overtime compensation shown to be owed pursuant to 29 U.S.C. § 216(b);

38. Reasonable attorneys' fees, expert witness fees, and costs pursuant to 29 U.S.C. § 216(b); and

39. Such other and further legal and equitable relief as may be appropriate under the facts of this case.

RESPECTFULLY SUBMITTED,

*s/ Jesse D. Nelson*
JESSE D. NELSON (BPR # 025602)
LAW OFFICE OF JESSE D. NELSON, PLLC
*Attorney for Plaintiffs*
9724 Kingston Pike, Suite 104
Knoxville, TN 37922
(865) 383-1053
jesse@jessenelsonlaw.com